UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JESSICA CROSS

                Plaintiff,

      v.                              **REPORT AND RECOMMENDATION**
                                          **08-CV-0862 (TJM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

                Defendant

## I.    Introduction

Plaintiff Jessica Cross brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security  ("Commissioner"), denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards. Plaintiff has also submitted a motion to strike the supplemental transcript in this case.

## II.    Background

On March 17, 2005, Plaintiff, then nineteen (19) years old, protectively filed an application for SSI and DIB, claiming disability since March 2, 1998, because of

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.

schizophrenia and manic depression (R. at 31-32, 48-55).[2] Her application was denied initially on August 4, 2005 (R. at 25-32). Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on October 6, 2005 (R. at 33).

On December 19, 2006, Plaintiff and her attorney appeared before the ALJ (R. at 232-60). ALJ Robert E. Gale considered the case *de novo* and, on April 27, 2007, issued a decision finding Plaintiff was not disabled (R. at 12-24). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 20, 2008 (R. at 4-7). On August 12, 2008, Plaintiff filed this action disputing the disability determination. Both parties thereafter filed briefs in support of their respective positions and Plaintiff filed a motion to strike the supplemental transcript. Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III.    Discussion

### A.  Motion to Strike the Supplemental Transcript

On May 11, 2009, the Commissioner filed a supplemental transcript consisting of a letter dated February 9, 2007, from the ALJ to "Elain Scherba-Germain," a medical source for the Plaintiff (SR. at 261-62).[4] The letter to Ms. Scherba-Germain requested all medical records for the relevant period (SR. 261). At the bottom of the letter is an

---

[2] Citations to the underlying administrative record are designated as "R."
[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the supplemental transcript are designated as "SR."

unsigned handwritten notation stating "no response as of 3/27/07" (SR. at 261). The letter was part of the original transcript before the ALJ, but was omitted when the transcript was prepared for the parties and submitted to this Court. See, Defendant's Motion Reply, Attachment A, pp. 2-4.

Plaintiff requests that the Court (1) strike the supplemental transcript; or (2) require the Commissioner to demonstrate that the transcript contains new and material evidence under the sentence six standard in 42 U.S.C. § 405(g); or (3) grant the Plaintiff permission to file a Reply to Defendant's Memorandum of Law in the underlying case "in order to afford the Plaintiff due process in addressing all the evidence." Plaintiff's Motion, p. 2.

In response, the Commissioner argues (1) that there is no authority to support Plaintiff's motion to strike the supplemental transcript; (2) that the supplemental transcript does not contain new and material evidence and remand pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted; and (3) that Plaintiff already made a merits argument on the development of the record which obviates the need for another submission on the same. Defendant's Motion Reply, p. 1.

## 1.    The Motion to Strike the Supplemental Transcript is Denied

As an initial matter, the Court notes that Defendant has offered authority and an explanation for the submission of the supplemental transcript in the first instance. Defendant's Reply, pp. 1-4. The Commissioner's procedure manual for appeals, HALLEX clearly anticipates that on occasion a document or page will be "inadvertently omitted from the original" certified record, in which case an SSA employee will have to

3

prepare a supplemental certified administrative record.[5]  In addition, Patrick J. Herbst,

the Chief of Court Case Preparation and Review, submitted a declaration explaining

that the letter to Ms. Scherba-Germain was inadvertently omitted from the transcript in

October of 2008, but was recovered when his employees searched the original files at

the request of an SSA attorney in April of 2009. Declaration of Patrick J. Herbst, Dkt.

No. 25, Attachment 1, pp. 2-4.

Furthermore, although Plaintiff has asserted that there is "no foundation" for the

letter and that it is "of unknown etiology," the supplemental transcript also contains a

certification, signed by Mr. Herbst. Plaintiff's Motion, p. 4; Supplemental Transcript, p. ii.

The certification, dated April 29, 2009, states that "the documents annexed hereto are

true and accurate copies of the letter dated February 9, 2007 which were [sic]

inadvertently omitted from the administrative record in the case of Jessica L. Cross,

certified on October 2, 2008." (SR. at ii).

As to whether the Court should now strike the properly submitted supplemental

transcript, the Court notes that Plaintiff cited no authority for her request. See Plaintiff's

Motion, pp. 2-4. Therefore, the Court turns first to the statute.

The Act requires that "[a]s part of the Commissioner's answer the Commissioner

of Social Security shall file a certified copy of the transcript of the record including the

evidence upon which the findings and decision complained of are based." 42 U.S.C. §

405(g) (sentence three). The court's power to affirm, modify, or reverse the

---

[5] HALLEX: Hearings, Appeals and Litigation Manual I-4-1-58(D) (S.S.A. 2009), *available at*
http://www.ssa.gov/OP_Home/hallex/I-04/I-4-1-58.html (listing situations when a supplemental certified
administrative record must be prepared, including when documents or pages of the file are omitted
because of inadvertence, printing error, or missing material was later obtained).

Commissioner's decision is based upon a review of the pleadings and the transcript of record. 42 U.S.C. § 405(g) (sentence four). Thus, the Court's power to review the Commissioner's decision is predicated, in part, upon a review of the "evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g) (sentence three).

The ALJ based his decision, in part, upon Ms. Scherba-Germain's failure to provide treatment notes despite requests by Plaintiff's attorney and the Social Security Administration. In his written decision, the ALJ referred to his own attempts to obtain treatment notes from Ms. Scherba-Germain: "Furthermore, despite the claimant's attorney's and the Administration's endeavors, the record is void of any treatment notes from Dr. [sic] Scherba-Germain to support her opinion" (R. at 22).[6] And, the hearing transcript shows that Plaintiff's counsel was seeking treatment notes from Ms. Scherba-Germain even before the hearing (R. at 234-35) ("[W]e've been trying to get the treatment records from her current psychologist, Dr. Shreiver Germain, [sic] who submitted a medical source statement, but not her treatment notes."). Thus, it is only logical to conclude that the Court cannot strike a portion of the evidence upon which the Commissioner relied in formulating his decision.

Furthermore, there is ample case law to support the general premise that "a reviewing court considers the whole record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court is limited to reviewing the administrative record that was before the agency and formed the basis for the agency's decision. See Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir.

---

[6] Both Plaintiff's attorney and the ALJ have occasionally, but mistakenly, referred to Ms. Scherba-Germain as a psychologist instead of a nurse practitioner.

1981) (finding that the district court properly struck litigation affidavits);see also State of New York v. Shalala, 1996 WL 87240, at *5 (S.D.N.Y. 1996) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)) ("Judicial review of agency action is generally limited to review of the full administrative record that was before the agency at the time it rendered its decision."). Therefore, a court may strike materials submitted to the court "on an appeal from agency action that were not part of the administrative record on which the challenged agency action was based." State of New York v. Shalala, 1996 WL 87240, at *5 (citations omitted); see, e.g., Idaho Conservation League v. Thomas, 91 F.3d 1345, 1350 (9th Cir. 1996) (finding that the district court properly struck documents "which were not before the decision maker at the time of the decision" and declined to strike exhibits which it determined "were part of the record"). Once again, the logical inference from this case law is that to strike any portion of the record upon which the agency relied would only frustrate the Court's duty to review "the whole record."

Therefore, the Court denies Plaintiff's motion to strike the supplemental transcript.

### 2.      The Motion for Remand Under "Sentence Six" Is Denied

Plaintiff also moves for the Court to require the Commissioner to prove that the supplemental transcript meets the three part standard set out on "sentence six" of 42 U.S.C. § 405(g) for remanding a case to receive "additional evidence." Plaintiff's Motion, p. 3. However, Plaintiff misunderstands the purpose of the sentence six standard in question. Sentence six of section 405(g) states in relevant part:

The court . . . may at any time order additional evidence to be taken

before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g) (sentence six). This portion of the sentence six remand applies specifically to evidence that was not before the Commissioner and is submitted for the first time to the District Court. See Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991) (explaining that under sentence six "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding"); accord Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (noting that sentence six "plainly describes" remand "when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding").

Once again, the Court notes that the supplemental transcript in this case contains a letter from the ALJ to Ms. Scherba-Germain, dated prior to the ALJ's written decision. By its very nature, the letter is part of the evidence upon which the ALJ based his decision. See (R. at 22) (The ALJ's decision in which he states, "Furthermore, despite the claimant's attorney's and the Administration's endeavors, the record is void of any treatment notes from Dr. [sic] Scherba-Germain to support her opinion."). Cf. See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-69 (11th Cir. 2007) ("Our settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review."); see, e.g., Peacock v. Astrue, 2008 WL 2074426, at *3 (May 15, 2008, M.D.Ala.) (declining to remand under sentence six of 42 U.S.C. § 405(g)

7

where evidence was not available to the ALJ, but was considered by the Appeals Council, because sentence six does not "grant a court the power to remand for reconsideration of evidence previously considered by the Appeals Council"). The ALJ clearly had the letter available to him at the time he was considering Plaintiff's claim because he had written the letter prior to writing his decision. And, the letter was clearly not submitted for the first time to this Court. Therefore, the Court denies Plaintiff's motion for sentence six remand because the letter to Ms. Scherba-Germain is not the type of evidence to which sentence six remand applies.

### 3.    The Motion for Permission to Reply is Denied

Finally, Plaintiff moves for permission to file a Reply to Defendant's Memorandum of Law in the underlying case. Plaintiff's Motion, p. 2. Defendant points to General Order 18, which directs local procedure for Social Security benefits appeals in the N.D.N.Y. Defendant's Response, p. 8. Although General Order 18 does not explicitly prohibit a Reply, the procedures outlined do not allow for a Plaintiff to submit a Reply to the Commissioner's Brief. See General Order 18, (N.D.N.Y. Sept. 12, 2003) (ordering Plaintiff and Commissioner to each file a brief).

Plaintiff is essentially arguing that allowing a Reply would be equitable. Plaintiff's Motion, p. 2, 4 (arguing that Plaintiff relied on the original transcript and that she was prejudiced by the withholding of the letter). Plaintiff notes that Defendant had an opportunity to consider the evidence in the supplemental transcript before submitting his Brief, but that Plaintiff's Brief was submitted before the supplemental transcript was

available.[7]

Defendant counters that Plaintiff "already made a merits argument on issue of the supplemental transcript" in her motion to strike. Defendant's Response, pp. 7-8. Defendant is referring to the paragraph on page four of Plaintiff's Motion in which she argues the merits of the underlying case.[8] Defendant, then also makes an argument on the underlying merits, responding to the paragraph on page four of Plaintiff's Motion. Defendant's Reply, pp. 6-7.[9]

Because Plaintiff and Defendant have both reviewed the supplemental transcript and have both presented arguments based on that review, the Court denies Plaintiff's request to submit a Reply. However, the Court has considered the arguments presented in both Plaintiff's and Defendant's motion papers.

### B.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine _de novo_ whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

---

[7] The Docket shows that Plaintiff's Brief was filed March 7, 2009; that the Supplemental Transcript was filed on May 11, 2009; and that Defendant's Brief was filed on May 21, 2009. 5:08-CV-0862, Docket Nos. 15, 20, 21.

[8] Plaintiff argues that even if the supplemental transcript shows that the ALJ wrote one letter requesting medical records from  Ms. Scherba-Germain's, a single letter does not meet the requirement in 20 C.F.R. §§ 404.1512(d) and 416.912(d) that the Commissioner will make "every reasonable effort" to help a claimant get medical records. Plaintiff's Motion, p. 6.

[9] Defendant argues that 20 C.F.R. §§ 404.1512(d) and 416.912(d) apply to initial requests for evidence from a medical source and in this case the relevant provisions are §§ 404.1512(e) and 416.912(e) which require the Commissioner to "recontact" a medical source when the evidence received is inadequate. Defendant's Reply, p. 7. Thus, Defendant argues, the ALJ's single letter satisfies the regulatory requirement to "recontact." Defendant's Reply, p. 7.

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[10] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

Based on the entire record, the Court recommends that the Commissioner's decision be affirmed.

---

[10] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

### C. Analysis

#### 1.        The Commissioner's Decision

The ALJ concluded that Plaintiff had not been under a disability within the meaning of the Act "since October 1, 2003, the date she first became insured" (R. at 16). At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 2, 1998 (R. at 17). At step two, the ALJ found that Plaintiff had two severe impairments: a depressive disorder not otherwise specified and a personality disorder (R. at 18). However, the ALJ concluded that Plaintiff's following impairments were not severe: right ankle pain, lactose intolerance, cannabis dependence, schizophrenia, and a back impairment (R. at 18-19). At step three, the ALJ concluded that Plaintiff's impairments did not meet either Listing 12.03 for schizophrenic, paranoid, or other psychotic disorders or Listing 12.04 for affective disorders (R. at 19). The ALJ considered the opinions of several medical sources and gave considerable weight to the opinions of State consultative psychologist, Kristen Barry, Ph.D.; considerable weight to the opinions of State reviewing psychologist Allan M. Hochberg, Ph.D.; and "very limited weight" to the opinions of Plaintiff's treating source, psychiatric nurse practitioner, Elaine Scherba-Germain (R. at 21-22).[11]

Considering Plaintiff's subjective complaints, the ALJ found that she was "not entirely credible" because the objective medical evidence did not support her allegations and because she gave inconsistent statements about her reasons for leaving college, whether she used illegal drugs, and the frequency of her alleged symptoms (R. at 22).

---

[11] The Court notes that at several points in the record and in the ALJ's decision, Nurse Scherba-Germain is mistakenly identified as a psychologist (R. at 21-22).

Considering all the evidence of record the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform at all levels of exertion. She can understand, remember, and perform simple tasks independently and with supervision; learn new tasks; and work in a low stress environment, defined as occasional contact with the public, co-workers, and changes in the work setting. She should avoid temperature extremes and concentrated exposure to fumes, dusts, odors, and gases." (R. at 19).

The ALJ found that Plaintiff had no past relevant work, so he quickly moved from step four to step five (R. at 23). At step five, the ALJ found that Plaintiff was a younger individual, with a high school education, who was able to communicate in English (R. at 23). The ALJ further found that although Plaintiff had nonexertional limitations, her limitations to only occasional contact with the public and coworkers and only occasional changes in the work setting did not amount to "a substantial loss in her ability to meet the demands of competitive, remunerative unskilled work" (R. at 24). The ALJ further found that her environmental restrictions "[did] not significantly affect her potential occupational base" (R. at 24). Therefore, the ALJ used Medical-Vocational Guideline Rule 204.00[12] as a framework for determining that Plaintiff was not disabled (R. at 23-24).

### 2.      Plaintiff's Claims

Plaintiff argues that the ALJ erred (a) in assessing Plaintiff's credibility; (b) in failing to find that Plaintiff's schizophrenia was a severe impairment; (c) in his

---

[12] Medical-Vocational Rule 204.00 applies to individuals with an RFC to perform heavy work or very heavy work, which "includes the functional capacity at the lesser functional levels as well," and indicates that such an RFC "generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 204.00.

development of the record; (d) in determining Plaintiff's RFC; and (e) in failing to consult

a vocational expert, and instead relying on the Medical-Vocational Guideline rules at

step five. Plaintiff's Brief, pp. 1-18.

### a.  The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff appears to be arguing that the ALJ failed to apply the proper legal

standards and that the ALJ's reasons for finding Plaintiff not credible are not supported

by the record. Plaintiff's Brief, pp. 15-17.

After reviewing the record, the Court is satisfied that the ALJ applied the proper

legal standards in assessing Plaintiff's credibility. In analyzing credibility, an ALJ must

engage in a two-step analysis by first determining whether the claimant has medically

determinable impairments, "which could reasonably be expected to produce the pain or

other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at

*2. Second, if medically determinable impairments are shown, then the ALJ must

evaluate the intensity and persistence of the symptoms to determine the extent to which

they limit the claimant's capacity to work. Social Security Ruling 96-7p, 1996 WL

374186, at *2 (S.S.A.) (hereinafter SSR 96-7p); 20 C.F.R. § 404.1529(c); Borush v.

Astrue, No. 3:05-CV-361, 2008 WL 4186510, at *12 (N.D.N.Y. Sept. 10, 2008). An ALJ

will determine that a claimant's symptoms limit his or her capacity to work to the extent

such limitations "can reasonably be accepted as consistent" with the medical and other

evidence of record. 20 C.F.R. § 404.1529(a); SSR 96-7p, 1996 WL 374186, at *2.

The ALJ applied the proper two-step analysis in this case when he found that

"the claimant's medically determinable impairments could reasonably be expected to

produce the alleged symptoms, but that the claimant's statements concerning the

intensity, persistence and limiting effects of those symptoms are not entirely credible"
(R. at 22). In reaching this conclusion, the ALJ considered the extent to which Plaintiff's
allegations were supported by the medical and other evidence (R. at 22).  The ALJ
found that Plaintiff's allegations were "not supported by the evidence of record and
[were] inconsistent with the opinions of the consultative examiner and State review
psychologist" (R. at 22).

The regulations further explain that because "symptoms sometimes suggest a
greater severity of impairment than can be shown by objective medical evidence alone,"
when assessing whether a Plaintiff's pain or other symptoms are credible, the ALJ must
carefully consider any other relevant information, including the claimant's statements,
and the factors listed in the regulations. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).The listed
factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity
of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage,
effectiveness, and side effects of any medication taken to relieve symptoms; (v) other
treatment received to relieve symptoms; (vi) any measures taken by the claimant to
relieve symptoms; and (vii) any other factors concerning claimant's functional limitations
and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

Contrary to Plaintiff's claims, the ALJ considered several of the relevant factors
when he evaluated Plaintiff's credibility (R. at 22). The ALJ considered Plaintiff's daily
activities, the frequency of Plaintiff's symptoms, the effectiveness of Plaintiff's
medications, Plaintiff's use of counseling for treatment, and the inconsistency of
Plaintiff's statements. Furthermore, substantial evidence in the record supports the
ALJ's overall conclusion.

With respect to Plaintiff's daily activities, the ALJ stated that although Plaintiff alleged that she was unable to be around people (R. at 86), she testified that she was able to attend and complete high school, attend some college, counsel a girl's support group, participate in cheerleading, work on the yearbook and, for at time, hold a part time job in which she supervised about ten people (R. at 22, 73-75, 240-42). The Court notes that all of these activities occurred after Plaintiff's alleged onset date of March 2, 1998 (R. at 69).

The ALJ also considered the frequency of Plaintiff's symptoms and the effectiveness of medications. The ALJ noted that although Plaintiff testified that she heard voices everyday, the record indicated far fewer incidences of auditory hallucinations (R. at 22). For example, records from Plaintiff's counseling sessions at Bright Path show that she went for months at a time without auditory hallucinations (R. 131-135) (documenting that Plaintiff reported to her counselor that she was not hearing voices from approximately August 2001 through February of 2002). Medical records from Plaintiff's primary physician, Dr. Lawrence Koss, show that Plaintiff did not mention auditory hallucinations again until October 19, 2004 (R. at 190). After Plaintiff began taking Seroquel, she told Dr. Koss that she was not experiencing auditory hallucinations, unless she missed a dose (R. at 180). In this respect, Dr. Koss concluded "[w]hen she takes her medication on time it seems to work out well" (R. at 180). Thus, the record supports the ALJ's observation that "when the claimant took her medications, she reported no hallucinations" (R. at 22).

The ALJ also considered that Plaintiff's mental impairment only occasionally merited counseling as part of her treatment, observing that Plaintiff did not begin

treatment with Nurse Scherba-Germain until February 2005 (R. at 22). The record indicates that Plaintiff was treated at Bright Path with regular individual counseling sessions from February 2001 through January 2002, when Plaintiff cut off contact with her counselor (R. at 130-38). The record further indicates that Plaintiff did not seek counseling again until she began seeing Nurse Scherba-Germain in 2005 (R. at 76).

Finally, the ALJ considered that Plaintiff made inconsistent statements about not only the frequency of her symptoms, but also her drug use, and her reasons for leaving college. See SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); see also 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). As discussed above Plaintiff testified that she heard voices every day, but the record indicates otherwise. Furthermore, the ALJ correctly noted that although Plaintiff testified that she had no history of abusing drugs or alcohol, she told consultative examining psychologist, Dr. Barry, that she used marijuana daily (R. at 146, 252). Additionally, Plaintiff testified that she left college because of an ovarian cyst, a nervous breakdown, and because she was diagnosed with "full blown schizophrenia" (R. at 22, 255-56), but Plaintiff told Dr. Barry that she was taken out of college because of an ovarian cyst, not because of any mental impairments (R. at 144).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a

17

claimant's subjective complaints . . . ." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Moreover, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

In light of the ALJ's discussion of several of the relevant factors, the Court concludes that the ALJ properly considered the regulatory factors in determining a claimant's credibility. See 20 C.F.R. §§ 416.929(c)(3)(i)-(vii); SSR 96-7p, 1996 WL 374186 at *3. The Court further concludes that substantial evidence of record supports the ALJ's finding that Plaintiff was "not entirely credible" (R. at 22).

### b. The ALJ Properly Determined That Plaintiff's Schizophrenia was a Non-Severe Impairment

Plaintiff argues that the ALJ erroneously relied upon his own opinion by disregarding Plaintiff's diagnosis of schizophrenia and that the ALJ should have acknowledged the opinions of Nurse Scherba-Germain and "reconciled them with his finding of non-severity." Plaintiff's Brief, pp. 12-13. Defendant argues that the ALJ properly found that Plaintiff's schizophrenia was a non-severe impairment. Defendant's Brief, pp. 10-13.

After carefully reviewing the record in this case, the Court concludes that the ALJ properly found that Plaintiff's schizophrenia was a non-severe impairment under the regulations. Furthermore, the Court concludes that the ALJ properly evaluated the

evidence with respect to Plaintiff's schizophrenia, including the opinions of Nurse Scherba-Germain, and did not substitute his own opinion (R. at 18-19, 21-22).

In assessing a mental impairment, an ALJ must apply a "special technique" at steps two and three. See 20 C.F.R. § 416.920a; Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a). The special technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 416.920a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[13] § 416.920a(c)(3). The ALJ applied this special technique and concluded that Plaintiff's depression and personality disorder were severe, but that her schizophrenia was not (R. at 18-19). The ALJ further reasoned that "the majority of the claimant's [schizophrenia] symptoms are abated with the use of medication" and that "based on the evidence of record, the claimant's symptoms did not impose more than minimal limitations [on] her ability to perform basic work activities" (R. at 18). The ALJ's conclusions are consistent with the appropriate legal standard: a non-severe impairment is one which "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). The Court therefore concludes that the ALJ applied the proper legal standards in assessing Plaintiff's schizophrenia.

---

[13] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Kohler, 546 F.3d at 266 n.5 (quoting United States Social Security Administration, Disability Evaluation Under Social Security § 12.00 (June 2006)).

The Court further concludes that substantial evidence of record supports the ALJ's findings. In response to the ALJ's questioning, Plaintiff testified that her symptoms of schizophrenia consisted of hearing voices (R. at 242-43). As discussed above, the record clearly shows that Plaintiff's auditory hallucinations were intermittent and even when present could be abated by medication (R. at 131-35, 180, 190). See supra Part III.C.2.a. In light of the evidence indicating that Plaintiff's schizophrenia symptoms were generally controlled, the Court concludes that substantial evidence supports the ALJ's finding that her schizophrenia did not significantly limit her ability to perform basic work activities.

Moreover, the Court notes that it is questionable whether the record even supports a diagnosis of schizophrenia. Consultative examining psychologist, Dr. Barry diagnosed Plaintiff with depressive disorder, cannabis dependence, personality disorder with borderline traits, and indicated the need to rule out schizoaffective disorder (R. at 148). The State's reviewing psychologist, Dr. Hochberg,  listed Plaintiff's diagnoses as depression not otherwise specified and cannabis dependence (R. at 163, 168). Notably, the ALJ granted Dr. Barry's and Dr. Hochberg's opinions considerable weight (R. at 21). In 1998, a psychiatrist at St. Joseph's hospital diagnosed Plaintiff with recurrent major depressive disorder without psychotic features and the need to rule out borderline traits (R. at 126). In 2001, Dr. B. Tanenbaum, M.D. at Four Winds diagnosed Plaintiff with depression not otherwise specified and psychosis not otherwise specified (R. at 128). Plaintiff's primary physician, Dr. Koss, twice noted schizophreniform behaviors and once questioned whether Plaintiff had schizophrenia but never diagnosed Plaintiff with either

schizophreniform disorder[14] or schizophrenia (R. at 180-81). In fact, the only source to

diagnose Plaintiff with schizophrenia was Nurse Scherba-Germain (R. at 217). Although

a nurse practitioner's opinion[15] may be entitled to "extra consideration" in the Second

Circuit, Mongeur v. Heckler, 722 F.2d 1039 n.2 (2d Cir. 1983); see also Kohler v.

Astrue, 546 F.3d 260, 268-69 (2d Cir. 2008) (indicating a nurse practitioner's opinion is

entitled to some consideration), in this case, the ALJ granted Nurse Scherba-Germain's

opinions "very limited weight" because her opinions were inconsistent with the rest of

the record and not substantiated by clinical diagnostic techniques (R. at 21-22). Despite

the slim evidence that Plaintiff met the diagnostic criteria of schizophrenia, the ALJ

considered the diagnosis and Plaintiff's alleged symptoms. Moreover, the ALJ clearly

considered Nurse Scherba-Germain's opinions and explained why he nonetheless

found schizophrenia a non-severe impairment (R. at 18-22). In light of the above, the

Court concludes that the ALJ's finding that Plaintiff's schizophrenia was non-severe was

in accordance with the proper legal standard and supported by substantial evidence.

### c.  The ALJ Satisfied His Duty to Develop the Record

Plaintiff argues that the ALJ failed to meet his duty to develop the record with

respect to missing treatment notes from Nurse Scherba-Germain. Plaintiff's Brief, p. 13;

Plaintiff's Motion p. 6. Defendant argues that the ALJ's letter to Nurse Scherba-Germain

requesting information satisfies the regulatory requirement that the ALJ "recontact" a

---

[14] Schizophreniform disorder is "a disorder whose essential features are identical with those of schizophrenia" except the symptoms are present for at least one month but not the six months required to diagnose schizophrenia and the patient's level of functioning may or may not be affected. Stedman's Medical Dictionary (27th ed. 2000), available at STEDMANS 116700 (Westlaw).

[15] Under the regulations a nurse practitioner's opinions are not considered medical opinions. 20 C.F.R. §§ 416.927(a) (explaining that medical opinions come from "acceptable medical sources"); 416.913(d) (listing nurse practitioners as an "other" medical source and not an "acceptable medical source").

medical source when additional information is necessary. Defendant's Reply, p. 7.[16]

In the Second Circuit, an ALJ has an affirmative duty to fully and fairly develop the record *sua sponte*, even when a claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also 20 C.F.R. §§ 404.1512(d), 416.912(d) (describing the Commissioner's duty to develop a claimant's medical history for at least the twelve-month period prior to the disability application); 20 C.F.R. § 404.1512(e)(1), 416.912(e)(1) (describing the Commissioner's duty to "recontact" a treating source to seek additional information when the evidence provided is inadequate to make a determination). Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Rosa, 168 F.3d at 79 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

As the parties acknowledge, the record lacks treatment notes from Nurse Scherba-Germain. In fact, Nurse Scherba-Germain's opinions lack any supporting medical evidence whatsoever. However, the record also clearly indicates that numerous attempts were made to obtain supporting evidence from Nurse Scherba-Germain. The State agency made two attempts to obtain evidence from Nurse Scherba-Germain (R. at 76, 150). The hearing transcript shows that Plaintiff's counsel was seeking treatment notes from Ms. Scherba-Germain before the hearing (R. at 234-35) ("[W]e've been trying to get the treatment records from her current psychologist, Dr. Shreiver Germain, [sic] who submitted a medical source statement, but not her treatment notes."). And, at the hearing the ALJ and Plaintiff's counsel agreed that counsel would be given an

---

[16] In thoroughly evaluating this issue, the Court has also considered the additional arguments raised in Plaintiff's Objection to Supplemental Transcript and Motion for Remand and in Defendant's Response to Plaintiff's Objection to Supplemental Transcript. See Docket Numbers 22 and 25.

additional ten days to make further attempts to obtain the evidence (R. at 234-36, 259).

Finally, the record shows that the ALJ requested that Nurse Scherba-Germain provide

all medical records for the relevant period (Supplemental Record at 261-62). Despite

these numerous requests, Nurse Scherba-Germain failed to provide any treatment

notes or documentation supporting her opinions. Other than the medical source

statement she supplied via Plaintiff's counsel, Nurse Scherba-Germain failed to respond

in any manner to these multiple requests for information. In light of the numerous

attempts to recontact Nurse Scherba-Germain and her persistent failure to respond, the

Court concludes that the ALJ met his duty to seek additional information from this

treating source in developing the record. See 20 C.F.R. § 404.1512(e)(1), 416.912(e)(1)

(describing the ALJ's duty to "first recontact [a claimant's]  treating physician or

psychologist or other medical source to determine whether the additional information

[he] need[s] is readily available"); see, e.g., Messina v. Astrue, 2009 WL 4930811, at *8

(Dec. 21, 2009 S.D.N.Y.) ("By repeatedly attempting to fill in gaps in the medical

evidence, the ALJ fulfilled his affirmative duty to develop the record."). Although the ALJ

in this case sent only one letter requesting information from Nurse Scherba-Germain, he

had evidence before him indicating that she had repeatedly ignored such requests. In

light of this evidence, the Court finds that the ALJ was entitled to conclude that she

would continue to not provide the necessary information. 20 C.F.R. §§ 404.1512(e)(2);

416.912(e)(2) (explaining that the ALJ "may not seek additional evidence or clarification

from a medical source when [he] know[s] from past experience that the source either

cannot or will not provide the necessary findings").

### d.  The ALJ's RFC Determination Was Supported By

## Substantial Evidence

Plaintiff argues that the ALJ's RFC determination is necessarily unsupported by substantial evidence because of the ALJ's failure to properly develop the record. Plaintiff's Brief, p. 15. As the Court has already concluded that the ALJ did not fail to properly develop the record, the Court cannot conclude that the RFC is necessarily flawed for such a reason. However, the Court has also examined the record and concluded that the RFC is supported by substantial evidence.

The ALJ found Plaintiff had the RFC to

perform at all levels of exertion. She can understand, remember, and perform simple tasks independently and with supervision; learn new tasks; and work in a low stress environment, defined as occasional contact with the public, co-workers, and changes in the work setting. She should avoid temperature extremes and concentrated exposure to fumes, dusts, odors, and gases.

(R. at 19). The record supports each element of the RFC. See Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y. 1999) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)) (indicating that for an RFC finding to be upheld substantial evidence must support the findings for each exertional and non-exertional ability).

With respect to Plaintiff's exertional abilities, the record supports the ALJ's conclusion that Plaintiff had no limitations. The record does not show nor did Plaintiff allege that any medically determinable impairments limited her exertional abilities (R. at 242-44) (Plaintiff testified that the problems stopping her from working were schizophrenia and depression). See also 20 C.F.R. §§ 404.1512(a); 416.912(a) ("We will consider only impairment(s) you say you have or about which we receive evidence."); see also Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.)

("Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms."). Thus, the record supports the ALJ's finding that Plaintiff could perform at all exertional levels.

Additionally, substantial evidence supports the ALJ's conclusions as to Plaintiff's nonexertional limitations. Dr. Barry, Dr. Hochberg, and even Nurse Scherba-Germain all opined that Plaintiff could understand and carry out simple instructions (R. at 147-48, 176, 219). Dr. Barry also opined that Plaintiff could maintain attention and concentration but would have difficulty handling stress (R. at 147-48). Dr. Hochberg clarified that despite her limitations Plaintiff could accept instruction and respond appropriately to criticism from a supervisor, respond appropriately to changes in the work setting, and maintain adequate attention and concentration (R. at 176). In light of the consistent opinions of the two psychologists—Dr. Barry and Dr. Hochberg—the Court concludes that substantial evidence of record supports the ALJ's non-exertional limitation findings.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these

25

examining and non-examining State agency medical consultants are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Finally, substantial evidence also supports that ALJ's conclusion that Plaintiff "should avoid temperature extremes and concentrated exposure to fumes, dusts, odors, and gases" (R. at 19). At her hearing, Plaintiff testified that she used her inhaler approximately two times a day and up to three or four times (R. at 258). She explained that cold air, dust, smoke, cat hair, and other irritants set off her asthma (R. at 258). The record indicates that Dr. Koss regularly treated Plaintiff for asthma which was occasionally exacerbated (R. at 179, 182, 196, 210-11). Therefore, the Court concludes that substantial evidence of record supports the ALJ's finding that Plaintiff should avoid respiratory irritants.

### e.  The ALJ did not Err in Failing to Call a Vocational Expert

Plaintiff argues that because of her nonexertional limitations—specifically that she could only have occasional contact with the public and coworkers and only occasional changes in a work setting—the ALJ "should have consulted a vocational expert" ("VE") at step five. Plaintiff's Brief, p. 18-19. Defendant argues that the ALJ properly found that Plaintiff's nonexertional limitations did not significantly diminish her ability to perform unskilled work and therefore the ALJ did not require the services of VE to determine that Plaintiff was not disabled at step five.

The Second Circuit has said that "the necessity for expert testimony must be determined on a case-by-case basis." Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir.

26

1986). The Court explained, that "where the claimant's work capacity is *significantly diminished* beyond that caused by his exertional impairments the application of the grids[17] is inappropriate." Id. at 605-06 (emphasis supplied). In such a case, the testimony of a vocational expert may be necessary. Id. at 606 (concluding that the ALJ must consider "whether the range of work [the plaintiff] could perform was so significantly diminished as to require the introduction of vocational testimony" or "other similar evidence"); see also Social Security Ruling 85-15, 1985 WL 56857, at *3-*4 (S.S.A. 1985) (hereinafter SSR 85-15).The Second Circuit defined "significantly diminished" to mean "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."Bapp, 802 F.2d at 606.

In the specific case of a claimant with only nonexertional limitations, an ALJ must consider "whether the person can be expected to perform unskilled work." SSR 85-15, 1985 WL 56857, at *4. Unskilled work includes "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Id. Social Security Ruling 85-15 explains that "a substantial loss of ability to meet any of [the unskilled work] activities would severely limit the potential occupational base." Id. However, a claimant with only nonexertional limitations who can perform unskilled work at all levels of exertion has a "large job base." Id. This is

---

[17] The "grids" or "grid" refers to the Medical-Vocational guideline rules published in Appendix 2 of 20 C.F.R. Part 404, Subpart P. The grid "resolves the issue of capability to do other work [at step five] by addressing specific combinations of the factors (i.e., RFC, age, education, and work experience) that determine capability to do work other than that previously performed." Social Security Ruling 83-10, 1983 WL 31251, at *1 (S.S.A.)

reflected in the "approximately 2,500[18] medium, light, and sedentary [unskilled] occupations," each representing numerous jobs, which make up the grids. Id. at *1.

In this case, the ALJ found that Plaintiff was capable of "unskilled work at all levels of exertion" and concluded "the claimant does not have a substantial loss in her ability to meet the demands of competitive, remunerative unskilled work" (R. at 23, 24).

After carefully reviewing the evidence, the Court concludes that substantial evidence of record supports the ALJ's conclusion that Plaintiff could perform unskilled work. Dr. Barry opined that Plaintiff was able to understand and follow simple instructions, could perform simple tasks and learn new tasks, and could maintain attention and concentration (R. at 147-48). Similarly, Dr. Hochberg opined that Plaintiff had the ability to carry out simple instructions, respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting (R. at 176). Although Nurse Scherba-Germain opined, inter alia, that Plaintiff would be unable to meet competitive standards in remembering work-like procedures and responding appropriately to supervision, and was seriously limited in her ability to respond appropriately to changes in the work setting, the ALJ determined that Nurse Scherba-Germain's opinions were entitled to "very limited weight" (R. at 22, 219).

The Court further concludes that because the ALJ properly found Plaintiff could perform unskilled work at all levels of exertion, her work capacity was not significantly

---

[18] Although the figure of 2,500 occupations was published in 1985, at least as recently as 1992, the Social Security Administration endorsed the view that the grids reflected significant numbers of occupations. See Status of the Medical-Vocational Rules, 57 Fed. Reg. 43005, 43,006 (Sept. 17, 1992) (explaining that they "had received no significant data or other evidence to indicate that the unskilled occupational base as described in the text of these rules had changed substantially" and that an analysis of data for the updated version of the DOT showed "that the range of work of which the medical-vocational rules take administrative notice continues to represent more occupations than would be required to represent significant numbers.").

diminished such that the ALJ was required to call a VE to testify. See Bapp, 802 F.2d at 606; SSR 85-15, 1985 WL 56857, at *4. Therefore the Court finds no error in the ALJ's analysis at step five.

Although the argument is somewhat muddled, Plaintiff appears to specifically object to a perceived inconsistency between the ALJ's conclusion that Plaintiff could have only occasional contact with the public and coworkers and only occasional changes in the work setting and the ALJ's conclusion that Plaintiff could perform unskilled work. After careful consideration, the Court finds that, in this case, Plaintiff's particular nonexertional limitations were not incompatible with the requirements of unskilled work because they amounted to less than a substantial loss of the necessary abilities. See Social Security Ruling 96-9p, 1996 WL 374185, at *9 (S.S.A.) (explaining that "a less than substantial loss of ability to perform any of the [unskilled] basic work activities may or may not significantly erode the unskilled . . . occupational base"). In particular, the Court relies on the underlying evidence in this case, which supports the ALJ's conclusion that Plaintiff can perform unskilled work. For example, reviewing psychologist, Dr. Hochberg explicitly stated: "The claimant has the ability to carry out very short and simple instructions. . . . the claimant has the ability to accept instructions and respond appropriately to criticism from supervisors . . . the claimant has the ability to respond appropriately to changes in the work setting" (R. at 176). Therefore, the Court finds the Plaintiff's argument without merit in this respect.

### IV.    Conclusion

After carefully examining the administrative record, the Court finds the Commissioner's decision is supported by substantial evidence and determined in

accordance with the applicable law. The ALJ properly considered Plaintiff's credibility, found Plaintiff's schizophrenia non-severe, developed the record, and determined the RFC. Based on the foregoing, it is respectfully recommended that the Commissioner's decision denying disability benefits be AFFIRMED in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge



DATED: May 24, 2010
Syracuse, New York

**Orders**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.**

<u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Small v. Sec'y of Health & Human Servs.</u>, 892

F.2d 15 (2d Cir.1989); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

Victor E. Bianchini
United States Magistrate Judge


DATED: May 24, 2010
Syracuse, New York